## Wagenseller *versus* Simmers.

1. In an action for breach of promise of marriage, evidence of such conduct and behavior as are customary between persons under contract of marriage, is admissible to prove the existence of such contract.

2. A contract to marry without specification of time, is a contract to marry within a reasonable time. In determining what is a reasonable time, the age of the parties, their pecuniary ability and in general the circumstances of the particular case are to be taken into account.

3. A refusal to fulfil a promise of marriage may be inferred from a wilful and persistent neglect of the person with whom the contract has been entered into, or from any other conduct calculated publicly to indicate an abandonment of all intimate relations with her.

4. Where the defendant's conduct is such as has just been described. it is not incumbent upon the plaintiff to tender performance of her part of the contract before bringing suit.

5. Acts on the part of plaintiff, in an action for breach of promise of marriage, which did not amount to a waiver of the right of action, narrated and commented upon.

March 22d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Chester county :* Of January Term 1881, No. 187.

This was an action on the case for breach of promise of marriage. The *narr.* averred that in consideration that the plaintiff had promised to marry the defendant, the defendant had promised to marry the plaintiff, and that the plaintiff had refused to comply with his promise within a reasonable time, although requested so to do by the defendant, who was ready and willing, &c. Plea, not guilty.

Upon the trial, before FUTHEY, P. J., the defendant presented, inter alia, the following points :—

5. That to support the action of a breach of promise of marriage, if the defendant has not married another (in this case he has not), the plaintiff must show that she offered to marry the defendant, and he refused. If she does not so show, the verdict must be for the defendant. Ans. " This point is not affirmed. If the evidence satisfies the jury that the defendant broke this engagement of marriage, and that fact is shown, either by the words or the acts of the defendant, it is not necessary that the plaintiff should have made an offer to marry the defendant before bringing suit."

6. If no time is fixed and agreed upon for the performance of the contract, and no request is made by the plaintiff upon the defendant, the defendant is entitled to your verdict. Ans. " If no time is fixed for the performance of the marriage ceremony, if an agreement of marriage took place, the law presumes that it is to take place in a reasonable time, and, as I have said, it was not

1 OUTERBRIDGE—30

[Wagenseller *v.* Simmers.]

necessary for the plaintiff to make any request, if the defendant, by his words or acts, dispenses with the necessity for making the request."

7. That the plaintiff, in order to support her action for breach of promise, must show conclusively and beyond doubt, that she made a demand upon the defendant to marry her, and he expressly refused. If she has not done so, the verdict must be for the defendant. Ans. " This point is not affirmed, and in further answer to it, I refer you to what I have previously said upon the same subject."

The court had previously said as follows : " I say to you that, if the defendant, Mr. Wagenseller, either by words or acts, declared the contract at an end, it was not necessary for Miss Simmers to make a formal offer on her part before bringing suit, and, therefore, as the defendant denied that there was any contract of marriage, it was not necessary, upon her part, to ask him to perform the contract of marriage before bringing suit." And also, " If the evidence satisfies the jury that the defendant broke this engagement of marriage, and that fact is shown either by the words or the acts of the defendant, it is not necessary that the plaintiff should have made an offer to marry the defendant before bringing suit."

9. If the jury do not believe that the plaintiff was willing and ready, and offered to marry the defendant, and no time was agreed upon, the law presumes that the same would take place within a reasonable time after request, and if there has been no request, the defendant is entitled to recover. Ans. "I have already answered this point in the general charge and in my answers to the previous points."

10. If the plaintiff wrote the letter " A," which has been properly shown here, wherein she states, with other matters, that she would not have the defendant, and made other personal and offensive remarks about the defendant (such as would mortify the feelings of the defendant), the defendant is entitled to your verdict. Ans. " This point is not affirmed."

11. In order to entitle the plaintiff to recover for breach of promise when the time between the cessation of the visits of the defendant to the plaintiff and the time of bringing suit has been so short as in this case—not over two months—and where the defendant has not married any other person, or from the evidence, solicited any other person to marry him, the plaintiff must prove that she demanded of the defendant the fulfilment of his contract, and that he refused to do so. Ans. " This point is not affirmed, with the observations I have already made upon the question, as to whether this breach of contract, if there was a contract of marriage and a breach of it, was made by the defendant. If the defendant, by word or act, broke this contract, then it was not necessary for

[Wagenseller *v.* Simmers.]

the plaintiff to prove that she demanded a fulfilment of the contract, and that he refused it."

The evidence in the cause was voluminous and conflicting. It included a number of letters written by the plaintiff to defendant. The defendant relied upon the following letter, which the evidence showed was written on November 30th 1879, as showing that even if there had been a promise and refusal by the defendant to marry (which he denied), the plaintiff had released him from all obligation :—

A.

" JIM :—I think it is a sin and disgrace, I cannot come into church without you and Newton Wynn making fun of me, to-night two weeks there was a lady, a perfect lady told me, when I came in you and Newt. began to laugh, and Newt. told you to not cry.

" Jim, if you want to make fun of me, you must go somewhere else to do it, for no one in this neighborhood thinks anything of you. All they call you is McConkey and the Marsh Hog. Newt. Wynn is the only friend you have got, and you have to pay him for going with you. I hear that he has been talking about me over on the other side, but I don't care for him, he told Mr. Segnor he was not the cause of not going with me. I suppose you think that you have got a rich one, now, but such is not the case, every one knows how rich they are. Well, if I am poor, I do not wear the one hat for five or six years like she does, and turn it hind part before like she does. There was a person told me that Guthrie's girls made fun of me, when I went out of church.

" You always promised me that you would marry me, and I have been told by dozens of people to sue you and get some of your money. *I don't want you, for I know that I would have a Devil's life of it.* There is people tell me that I could put you where the dogs would not bark at you, or get some of your money. As you have so much of it, I send a letter away to-day, and I am waiting for an answer from it. There is plenty of lawyers, and some a great deal smarter, too, than Newton Wynn. Jim, you think that you can worry me, but you cannot do it. I did worry at first, but do not now ; to think you have been depriving me of other company all this time, everybody is talking about how you have been using me. *Now I am going to use you as bad as the law will allow me to do it.* I would not do anything with you, but if I cannot go out without you and Guthrie's making fun of me. *If you were poor I would not do anything with you ;* so rich, so gossiping, so deceitful, so fun-making, under-handed and sneaking. If you were any kind of a gentleman, you would not act as you have. I pray night and day that you may never prosper in this world. I just pray for every hair in your head to come out. *Why could you not tell me that you were not coming back,* as well as to tell Nute, for I heard he was telling it all

around, he told old Bill Segnor that he had to be blamed with you not going with me. I am the one that blamed him. You know that I always told you that he tried to coax you away, he knows that you have been going with me year after year, but the time will be here that you will like me more or less, but you have no mind of your own, and can be coaxed into anything by Newton Wynn.                                        From E. B. S."

The material portions of the testimony are reviewed in the opinion of this court.

Verdict for the plaintiff for $5000 damages.

A rule was entered to show cause why a new trial should not be granted. Before the return-day, the plaintiff released the excess over $2000, and the verdict was reduced to that amount, whereupon the rule for a new trial was discharged, and judgment entered upon the verdict for $2000.

The defendant took this writ of error, assigning for error, inter alia, the answers to points as above given.

*Wayne MacVeagh* (with whom was *Joseph J. Lewis*) for the plaintiff in error.—The evidence did not show a precedent demand by the plaintiff and refusal by the defendant to marry, before bringing this action for breach of promise. On the contrary, the letter " A" contains a refusal by the plaintiff to have the defendant. As no time is appointed for the fulfilment of the alleged contract, there can be no breach, enforceable by action, without a demand and tender of marriage by the plaintiff, and refusal, or acts equivalent to a refusal, by the defendant. There is no pretence that there was ever any actual demand or refusal. The short delay of two months between the cessation of the defendant's visits to the plaintiff, and the time of bringing suit, does not point to a refusal. The defendant had not incapacitated himself, by marrying another person, or soliciting another person to marry him. The evidence indicated that even if the defendant had offered to fulfil the contract, the offer would have been rejected. There was oral testimony that the plaintiff said, she did not want *him*, all she wanted was his money; and the letter " A" corroborates the statement.

The law on the subject of demand and default is thus stated in Add. on Cont., sect. 1353. " If no time is fixed and agreed upon for the performance of the contract, it is in contemplation in law a contract to marry within a reasonable period after request, and either of the parties may call upon the other to fulfil the engagement, and, in case of default, can bring an action of damages. If the parties lie by for an unreasonable period, and do not treat the contract as a continuing contract, the engagement will be deemed to be abandoned by mutual consent." See also Park *v.* Bolivar, 1 Tr. & H

[Wagenseller v. Simmers.]

Pract. 175, note 2; Gough v. Farr, 2 C. & P. 631; Burks v. Shain, 2 Bibb. 341; Martin v. Patton, Litt. (Ky.) 345; 2 Stark. on Ev. (7th Am. ed.) 706.

*R. E. Monaghan* (*P. F. Smith* with him), for the defendant in error.—In the absence of a fixed time for the performance of a contract of marriage, the law presumes it will be performed in a reasonable time. Where the defendant by his acts showed clearly that he had abandoned his contract, and by keeping away prevented a demand, a formal request is not necessary before bringing suit: 2 Hill. on Cont 118; Add. on Cont., sect. 1353; Caines v. Smith, 15 M. & W. 189; Stevenson v. Pettis, 4 W. N. C. 151; Nunan v. Bourquin, 7 Phila. R. 239. The jury found from all the evidence that there was a marriage contract, a sufficient tender or demand by the plaintiff, and breach by the defendant.

Mr. Justice MERCUR delivered the opinion of the court, May 2d 1881.

Three grounds of defence are taken by the plaintiff in error: First. He never promised to marry; second, he did not refuse to marry; and third, that she released him from his promise to marry. These different defences may have appeared rather inconsistent to the minds of the jurors. As he appears to have urged each with equal persistency, if they were clearly satisfied that he did promise, they may have given less weight than they otherwise would have done to his evidence bearing on the other points. If so, he has no just cause of complaint at a result produced by his own evidence.

1. The evidence to prove the contract of marriage was most ample to submit to the jury. It consisted in part in showing that he began to visit her in March 1877. From that time until October 1879, except during a few weeks in January 1878, he visited her from once to three times a week. He took her to pic-nics and celebrations, and to and from church. He kept her private company at her house, usually remaining until twelve o'clock at night. He also took her out riding, and gave that special attention which is considered evidence of the existence of a marriage contract. She further swore that in October 1877, he expressly promised to marry her and she to marry him, that he gave her a ring in recognition of their engagement; that this was followed by his presenting her with other small articles at different times. She further testified that he renewed his promise of marriage on Sunday evenings.

2. The evidence of his refusal to marry is not so express and direct. The question is whether his conduct and all the attending circumstances justified the jury in finding a refusal.

A contract to marry without specification of time is a contract to marry within a reasonable time. Each party has a right to a

[Wagenseller *v.* Simmers.]

reasonable delay, but not to delay without reason or beyond reason. The age of the parties and the pecuniary ability of the man to support a family are proper matters to consider in deciding on the reasonableness of the delay in a particular case. In this case, the woman was twenty-three years of age when the plaintiff in error first became her suitor. He was several years older. Her pecuniary means were quite limited. She was at service as a domestic servant. He was a well-to-do farmer, worth from $10,000 to $12,000. In view of the reasons, which usually influence persons to enter into the marriage relation, these facts had some tendency to prove her willingness to marry, and that he had no just reason for postponing it. In fact he gave no reason for postponing it during the two whole years. She testified that he passed the evening of the 4th of October 1879 in her company, remaining until after twelve o'clock; that he left, promising to call the next Sunday and take her to church. He came not. She had understood they were to be married the next winter. She soon heard that he was paying attention to another lady. The second Sunday passed without his coming. She then wrote to him, expressing her regret at his not keeping his promise, and her grief and pain at his neglect of her, and at his attentions to another girl, and asking his forgiveness for some remark she had previously made. To this letter he made no reply, and never visited her after the previous 4th of October. Sunday evenings thereafter she saw him at church in company with a young lady, and both looking at her in an insulting manner, but without speaking to her. This abrupt abandonment of her, his continued and persistent neglect of her, his assuming intimate relations with another lady to whom he paid marked attentions, his treatment of her in public, were all proper evidence from which the jury might find his refusal to marry. It was not necessary that he should say to her in express words, "I will not marry you," nor that she should run after him and say, "I entreat you to marry me." Marriage is a civil contract. A refusal to fulfil it may be as unmistakably manifested by conduct as by words. The true question was, whether the acts and conduct of the plaintiff in error evinced an intention to be no longer bound by the contract. This has been held a correct rule in case of an agreement of sale of personal property : Freeth *v.* Burr, L R., 9 C. P. 208. We think this rule applies with greater reason to a marriage contract, which should rest on mutual affection. His denial that he had ever promised to marry her, was of itself very strong evidence of a refusal. Coupled with his acts and persistent conduct, it fully justified the jury in finding a refusal.

3. The last position of the plaintiff in error is that she released him from his promise. This is claimed to be proved by the letter she wrote him on the 30th November 1879. It is true that letter does not express a desire to marry him, nor an existing affection

[Wagenseller *v.* Simmers.]

for him, and she does say, " I don't want you." Regard, however, must be given to the whole letter, and to the time when written, and the previous and existing facts which led to it. Relying on his promise of marriage, she had avoided the society of other gentlemen for two whole years. Her youth was passing. She had not received any answer to her letter of 16th October. She saw him weekly in the society of another. She thought he treated her with scorn and contempt. She recognised his conduct as unequivocal evidence of his refusal to marry her. Under these circumstances, it is very natural that all the bitter and angry feelings of a woman's nature should be aroused. She makes no pretence of a continuing affection, yet she does not indicate any intention of releasing him from his legal obligation for refusing to marry. Thus she says, " You always promised me that you would marry me, and I have been told by dozens of people to sue you and get some of your money." Again, " As you have so much of it (money), I send a letter away to-day, and I am waiting for an answer." " There are plenty of lawyers." " Now I am going to use you as bad as the law will allow me to do it." Thus, instead of notifying him that she has released him from his marriage contract, she reminds him of the position in which he has placed himself, and of her determination to hold him responsible for his breach of contract, and to resort to the law to punish him and to recover her damages.

The whole case was well and clearly presented by the learned judge. We discover no error in the record.

Judgment affirmed.